UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
------------------------------------------------------------------------X
LAMAR SIMMONS,

                                      Plaintiff,

      -against-

HORIZON HOUSE, INC.,
Rashida Inge, *individually*.

                                   Defendants.
------------------------------------------------------------------------X

Civil Action No.

**COMPLAINT**

**Plaintiff
Demands A
Trial by Jury**

Plaintiff, LAMAR SIMMONS, as and for his Complaint against Defendants HORIZON HOUSE, INC., and, Rashida Inge respectfully alleges upon information and belief as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to American with Disabilities Act of 1990, 42 U.S.C. § 12101 *et. seq* ("ADA"), the Family and Medical Leave Act of 1993 ("FMLA") as codified 28 U.S.C. §§ 2611 to 2619, and seeks damages to redress the injuries Plaintiff suffered as a result of unlawful discrimination, retaliation, and termination by Defendant due to his disability.

## JURISDICTION AND VENUE

2. Jurisdiction of this action is conferred upon the court as this action involves a Federal Question under American with Disabilities Act of 1990, 42 U.S.C. § 12101 *et. seq* ("ADA") and the Family and Medical Leave Act of 1993 ("FMLA") as codified 28 U.S.C. §§ 2611 to 2619.

3. The court has supplemental jurisdiction over the state and local causes of action.

4. Venue is proper in this district because the events giving rise to this claim took place in Philadelphia, PA within the Eastern District of Pennsylvania.

5. On or about February 26, 2018, Plaintiff filed charges with the EEOC against Defendants as set forth herein.

6. Plaintiff's claims were dual filed among the government agencies.

7. On or about December 10, 2018, Plaintiff received a Right to Sue Letter from the EEOC.

8. This action is being commenced within ninety (90) days of receipt of the EEOC Right to Sue Letter.

9. Plaintiff's EEOC charge of discrimination was dual filed with the Pennsylvania Human Relations Commission and the Philadelphia Commission on Human Relations.

10. Since it has been over one year since the time of filing the administrative charge, Plaintiff has exhausted his administrative remedies as to all federal, state and local claims.

## PARTIES

11. Plaintiff LAMAR SIMMONS (hereinafter referred to as Plaintiff and "SIMMONS" is an individual male who resides in the Commonwealth of Pennsylvania, County of Philadelphia.

12. Defendant HORIZON HOUSE, INC., (hereinafter referred to as Defendant and "HORIZON HOUSE") is a domestic non-profit duly existing under the laws of the Commonwealth of Pennsylvania.

13. Defendant HORIZON HOUSE operates its principal place of business at 120 S. 30th Street, Philadelphia, PA 19104.

14. Defendant RASHIDA INGE (hereinafter referred to as Defendant and "INGE") was at all times material an employee of Defendant HORIZON HOUSE.

15. At all times material, Defendant INGE was employed as a Director of the Mental Health Specialists.

16. At all times material, Defendant INGE held supervisory authority over Plaintiff.

17. Plaintiff was working at Defendant's location at 120 S. 30th Street, Philadelphia, PA 19104.

18. Plaintiff was at all times material, employed by Defendant HORIZON HOUSE.

## MATERIAL FACTS

19. In or around September 2014, Defendant HORIZON HOUSE hired Plaintiff as a Mental Health Specialist.

20. Plaintiff is a highly trained professional in the field of mental health with over thirteen (13) years of experience.

21. Soon after Plaintiff was hired, Plaintiff informed his supervisory Ron Bailey-Ford that he required accommodations to complete his work as a result of his psychological disability.

22. Plaintiff went on to explain that he has attention deficit disorder (hereinafter referred to as "ADD"), which interferes with Plaintiff's major life function or working because he has concentration issues coupled with other attention problems that cause difficult for Plaintiff to accomplish the requirements of his work.

23. In addition to the ADD, Plaintiff also suffers from a learning disability, which affects his reading and writing. This causes him some limitation in that it can take Plaintiff additional time to complete extensive reading and writing tasks.

24. Plaintiff then met with Vanessa Smith, Defendant's Human Resources Manager.

25. During that meeting, Ms. Smith told Plaintiff that Defendants would provide him with certain accommodations so that he could continue working for Defendants.

26. At the commencement of Plaintiff's employment, while Ron Bailey-Ford was Plaintiff's supervisor, Plaintiff received good reviews on his work and was not having any issues completing the tasks of the job because of his disability.

27. Ron Bailey-Ford accommodated Plaintiff's disability and as a result, Plaintiff did not experience any performance related issues under Bailey-Ford's supervision.

28. Between 2015 and 2016, Plaintiff's supervisory changed and rather than report to Ron Bailey-Ford, Plaintiff then reported to Rashida Inge.

29. In or around 2016, Plaintiff was diagnosed with prostate cancer.

30. Prostate cancer is a malignant tumor in a male's prostate that can cause difficulty starting and maintaining a steady stream of urine, dribbling of urine, excessive urination at night, frequent urination, sensation to urinate and leaking, urinary retention, and weak urinary stream.

31. As a result of this disability, Plaintiff's major life function of draining his bladder through urination was affected. Additionally, Plaintiff required immediate medical treatment to prevent further complications from the cancer.

32. Plaintiff informed Defendants that he needed to be treated for prostate cancer, and requested an accommodation that he be allowed to seek radiation and hormone treatment during his lunch break so that it would not interfere with his work.

33. At this time, Defendant Inge was Plaintiff's supervisor. Plaintiff's request for accommodation was patently denied. Rather, Defendants forced Plaintiff to take leave pursuant to the Family Medical Leave Act for treatment.

34. As a result, Plaintiff was not able to earn money during his treatment, since FMLA leave is unpaid.

35. Plaintiff did apply for and was approved for leave pursuant to the Family and Medical Leave Act.

36. After his approval, but before his leave began, Plaintiff had already begun his treatments for cancer.

37. Defendant Inge told another Director in words or substance prior to the commencement of Plaintiff's leave, but after his approval, that Plaintiff was "drugged up on cancer medicine."

38. Plaintiff who was seeking treatment for cancer, found this to be outrageously offensive.

39. Defendant Inge was attempting to terminate Plaintiff after his approval for FMLA leave and in retaliation for Plaintiff's request for an accommodation related to his disability and his request to use FMLA leave.

40. Plaintiff went on approved FMLA leave for approximately eight (8) weeks.

41. Plaintiff returned from leave in or around the beginning of 2017.

42. Almost immediately upon his return from leave, Defendant Inge began attacking Plaintiff's work performance and issuing Plaintiff performance write-ups.

43. Plaintiff once again went to human resources to request certain accommodations related to his ADD and his learning disability so that he could avoid future performance issues and continue with his employment.

44. Plaintiff met with Vanessa Smith and Defendant Inge to request the accommodations.

45. Defendants told Plaintiff that he would have a mentor assigned to him for the purpose of developing his writing and time-management skills; weekly supervision meetings (no longer than 45 minutes) to be split between his mentor and Rashida; and additional support in using Credible Behavioral Health Software.

46. While these accommodations were offered, they were never actually provided to Plaintiff.

47. Plaintiff's meetings with Defendant Inge and the mentor were inconsistent.

48. The few meetings that Plaintiff had with Defendant Inge, , she criticized Plaintiff and his work product rather than suggest ways to assist Plaintiff or mentor him.

49. Attempting to improve the situation on his own, Plaintiff enrolled in courses at the Community College of Philadelphia, because of the lack of accommodation he received from Defendants.

50. On or around June 28, 2017, Plaintiff received a performance review from Defendant Inge.  During that review, Plaintiff was chastised for not improving the quality of his documentation; not prioritizing tasks so that they are completed in a timely manner; and, not completing training that focused on his specialty.

51. Plaintiff was still completing the work at the level that he had when Bailey-Ford was his supervisor.

52. The only difference between Plaintiff's prior performance was the fact that he treated for cancer and was forced by Defendants to take FMLA leave.

53. During that same meeting, Defendants informed Plaintiff that he was being placed on a sixty- day review status with specific performance goals.

54. On or around September 2017, Defendants unlawfully terminated Plaintiff as a result of his disability and while failing to accommodate Plaintiff so that he could continue to work for Defendants.

55. Within six months of Plaintiff using FMLA leave for the purpose of cancer treatment, and after Defendant Inge's egregious comment about Plaintiff being "drugged up on cancer meds," Defendants terminated Plaintiff.

56. Plaintiff's termination was in direct retaliation for his electing to use medical leave. Further Defendants refused to accommodate Plaintiff due to his learning disability and ADD.

57. That as a result of Defendant's conduct and comments, Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

58. Plaintiff suffers from regular panic attacks and nightmares relating to Defendant's conduct.

59. As a result of Defendant's actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

60. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff also suffered future pecuniary

losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

61. As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against the Defendant.

62. Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

63. The above are just some examples, of some of the discrimination and retaliation to which Defendant subjected Plaintiff.

64. The Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

### AS A FIRST CAUSE OF ACTION FOR DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT (not against individual Defendants)

65. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

66. Plaintiff claims Defendant violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

67. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job

application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

68. Defendant engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of his child's disability.

69. Plaintiff has been damaged as set forth herein.

## AS A SECOND CAUSE OF ACTION FOR RETALIATION
## UNDER THE AMERICANS WITH DISABILITIES ACT
## (Not against individual Defendants)

70. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

71. SEC. 12203. [Section 503] states, "(a) Retaliation. - No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

72. Defendant violated the above and Plaintiff suffered numerous damages as a result.

## AS A THIRD CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW
## (Not Against Individual Defendants)

73. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

74. The PHRA § 955 provides that it shall be an unlawful discriminatory practice:  "(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent

contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required."

75. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of his race.

76. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the PHRA § 955.

### AS A FOURTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER STATE LAW
### (Not Against Individual Defendants)

77. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

78. PHRA § 955(d) provides that it shall be an unlawful discriminatory practice: "For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act."

79. Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

### AS A FIFTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER STATE LAW
### (Not Against Individual Defendants)

80. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

81. PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: " For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice.

82. Defendants engaged in an unlawful discriminatory practice in violation of PHRA § 955(e) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

### AS A SIXTH CAUSE OF ACTION
### UNDER CITY LAW

83. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

84. Fair Practices Ordinance §9-1103(1) states, "It shall be an unlawful employment practice to deny or interfere with the employment opportunitieis of an individual based upon his or her race, ethnicity, color, sex (including pregnancy, childbirth, or a related medical condition, sexual orientation, gender identity, religion, national origin ancestry, age disability, marital status, familial status, genetic information, or domestic or sexual violence victim status, incuding but not limited to the following:" §9-1103(1)(a), "For an employer to refuse to hire, discharge, or otherwise discriminate against any individual,

with respect to tenure, promotions, terms, conditions or privileges of employment or with respect to any matter directly or indirectly related to employment."

85. Defendants engaged in unlawful discriminatory conduct against Plaintiff due to his disability, and in retaliation for Plaintiff protesting Defendants' failure to accommodate Plaintiff's disabilities.

**AS A SEVENTH CAUSE OF ACTION
UNDER CITY LAW**

86. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

87. Plaintiff makes a claim under the Fair Practice Ordinance pursuant to §9-1103(1)(g), which includes adverse employment actions in retaliation for an employee's complaints of discrimination.

88. Plaintiff was terminated in retaliation for his protests that Defendants failed to accommodate his disabilities.

**AS AN EIGHTH CAUSE OF ACTION
UNDER CITY LAW**

89. Plaintiff repeats and realleges each and every allegation made in the above pragraphs of this complaint.

90. Plaintiff also makes a claim under the Fair Practice Ordinance pursuant to §9-1103(1)(h), which includes aiding, abetting, inciting, inducing, compelling, or coercing the doing of any unlawful discriminatory act against an employee.

91. Defendants aiding, abetting, inciting, compelling and coercing the unlawful discrimination and retaliation against Plaintiff despite his ongoing complaints.

### AS A NINTH CAUSE OF ACTION FOR VIOLATIONS UNDER THE FAMILY AND MEDICAL LEAVE ACT

92. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

93. §2612 of the FMLA states in pertinent part:

(a) In General

(1) Entitlement to leave

Subject to section 2613 of this title, an eligible employee shall be entitled to a total of 12 work weeks of leave during any 12-month period of one or more of the following:

(A) Because of the birth of son or daughter of the employee and in order to care for such son or daughter.

(B) Because of the placement of a song or daughter with the employee for adoption or foster care.

(C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition.

(D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

94. § 2615 of the Act states as follows: Prohibited acts

(a) Interference with rights

(1) Exercise of rights:

> It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

(2) Discrimination:

> It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter

95. Plaintiff was forced to take leave pursuant to the Family and Medical Leave Act.

96. Plaintiff was unlawfully terminated within a temporal proximity after he elected to take that leave.

97. Plaintiff was unlawfully terminated for electing to take leave pursuant to the FMLA.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress and back pay and front pay, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: Philadelphia, Pennsylvania
      March 11, 2019

                                            DEREK SMITH LAW GROUP, PLLC
                                            *Attorneys for Plaintiff*

                                            By: _____
                                                Samuel C. Wilson, Esq.
                                                1845 Walnut Street, Suite 1601
                                                Philadelphia, Pennsylvania 19103
                                                (215) 391-4790